2012 UT 85

**Shannon Glenn WINWARD, Plaintiff and Appellant,**

v.

**STATE of Utah, Defendant and Appellee.**

**No. 20101005.**

Supreme Court of Utah.

Dec. 7, 2012.

Grant W.P. Morrison, Matthew G. Morrison, Salt Lake City, for appellant.

Mark L. Shurtleff, Att'y Gen., Christopher D. Ballard, Asst. Att'y Gen., Salt Lake City, for appellee.

Justice PARRISH, opinion of the Court:

## INTRODUCTION

¶ 1 Petitioner Shannon Glenn Winward appeals the dismissal of his first petition for post-conviction relief. The district court dismissed Mr. Winward's petition as procedurally barred under the Post–Conviction Remedies Act's (PCRA's) one-year statute of limitations because he filed his petition more than ten years after the required date. Mr. Winward argues that applying the one-year statute of limitations to his petition violates the Utah Constitution under the "egregious injustice" exception that this court announced in *Gardner v. State,* 2010 UT 46, 234 P.3d 1115. We disagree and affirm the district court's dismissal of all but one of the claims alleged in Mr. Winward's petition. Mr. Winward may have a newly-recognized claim for ineffective assistance of counsel during the plea bargaining process under the recent U.S. Supreme Court decision, *Lafler v. Cooper,* —— U.S. ——, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), which may extend the statute of limitations on his claim under section 78B–9–107(2) of the Utah Code. We therefore vacate the district court's dismissal of Mr. Winward's claim for ineffective assistance of counsel during the plea bargaining process and affirm the dismissal of the remainder of Mr. Winward's claims.

## BACKGROUND

¶ 2 Mr. Winward appeals the dismissal of his petition for relief under the PCRA. In 1993, the State charged Mr. Winward with four counts of sodomy on a child, a first-degree felony, and one count of sexual abuse of a child, a second-degree felony. These charges arose out of allegations that Mr. Winward had repeatedly molested his girlfriend's eight- and ten-year-old sons, R.W. and T.W., over a four-year period, as well as a neighbor's six-year-old son, A.F., on one occasion.

¶ 3 Mr. Winward was tried twice. The first trial resulted in a hung jury. The State retried him, and his second jury trial resulted in a conviction on all charges. Mr. Win-

ward appealed his conviction to the Utah Court of Appeals, which affirmed his conviction in June 1997. *See State v. Winward,* 941 P.2d 627 (Utah Ct.App.1997). We denied certiorari in October 1997. The same counsel represented Mr. Winward in the first and second trials and in his direct appeal.

¶ 4 In April 2009, Mr. Winward, represented by new counsel, filed a petition for post-conviction relief. The district court summarily dismissed the petition as untimely under the PCRA's one-year statute of limitations without accepting any briefing from the parties. Mr. Winward appealed the dismissal and the Utah Court of Appeals reversed. *Winward v. State,* 2009 UT App 245U, 2009 WL 2837135 (per curiam). The court of appeals held that under section 78B–9–106(2) of the Utah Code, the district court judge must "give[ ] the parties notice and an opportunity to be heard" before summarily dismissing a petition sua sponte based on the time bar. *Id.* para. 4 (internal quotation marks omitted).

¶ 5 On remand, the State filed a motion for summary judgment based on the PCRA's one-year statute of limitations. Mr. Winward opposed the motion, alleging that the "egregious injustice" language in *Gardner v. State,* 2010 UT 46, ¶¶ 93–97, 234 P.3d 1115, created an exception to the PCRA's procedural bars and that this exception excused his untimely filing. The district court disagreed and granted summary judgment in favor of the State. The district court reasoned that even if this court had recognized an "egregious injustice" exception to the PCRA, Mr. Winward had failed to prove that it should apply in his case. Mr. Winward now appeals the district court's dismissal of his petition under the PCRA's one-year time bar. We have jurisdiction under section 78A–3–102(3)(j) of the Utah Code.

## STANDARD OF REVIEW

¶ 6 "We review an appeal from an order dismissing or denying a petition for post-conviction relief for correctness without deference to the lower court's conclusions of law." *Taylor v. State,* 2012 UT 5, ¶ 8, 270 P.3d 471 (internal quotation marks omitted).

## ANALYSIS

¶ 7 The district court dismissed Mr. Winward's petition as untimely under the PCRA's one-year statute of limitations. Mr. Winward admits that his petition was untimely, but he argues that the time bar should not apply to his petition for three reasons. First, Mr. Winward argues the PCRA's statute of limitations unconstitutionally strips this court of its habeas corpus authority. Second, he argues the previously recognized common law "good cause" and "interest of justice" exceptions apply to the PCRA's time bar. And third, Mr. Winward asks this court to apply an "egregious injustice" exception to the time bar based on our language in *Gardner v. State,* 2010 UT 46, 234 P.3d 1115. The State responds that Mr. Winward failed to raise the first two arguments in the district court and that those arguments are therefore unpreserved. The State also argues that the "egregious injustice" exception to the PCRA's statute of limitations is not applicable in this case. We agree with the State.

## I. MR. WINWARD FAILED TO PRESERVE HIS HABEAS CORPUS AND COMMON LAW EXCEPTION ARGUMENTS

¶ 8 Mr. Winward argues that the PCRA's time bar unconstitutionally strips this court of its habeas corpus authority. He also argues that we should apply our previously recognized common law exceptions to his untimely PCRA petition. Specifically, he argues that the "interest of justice" and "good cause" exceptions apply and that the PCRA's time bar is therefore inapplicable in this case. We need not address these arguments because they were not properly preserved below.

¶ 9 "As a general rule, claims not raised before the [district] court may not be raised on appeal." *State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346. This preservation rule serves two policy aims: fairness and judicial economy. *Patterson v. Patterson,* 2011 UT 68, ¶ 15, 266 P.3d 828. "An issue is preserved for appeal when it has been presented to the district court in such a way that the

court has an opportunity to rule on [it]." *Id.* ¶ 12 (alteration in original) (internal quotation marks omitted). In determining whether the district court had an opportunity to rule on an issue, a court considers three factors: "(1) whether the issue was raised in a timely fashion, (2) whether the issue was specifically raised, and (3) whether supporting evidence or relevant authority was introduced." *Warne v. Warne*, 2012 UT 13, ¶ 16, 275 P.3d 238 (internal quotation marks omitted). If an argument is unpreserved, we will not address it for the first time on appeal unless the party can prove either plain error or exceptional circumstances. *See Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346.

¶ 10 Mr. Winward failed to present to the district court his arguments regarding the writ of habeas corpus and the common law exceptions to the PCRA's procedural bars. In fact, in his brief to the district court opposing the State's motion for summary judgment and at the motion hearing, Mr. Winward never mentioned the court's habeas corpus authority. And Mr. Winward similarly failed to argue that any of the previously recognized common law exceptions to the PCRA's procedural bars applied to his case. Instead, Mr. Winward's arguments before the district court focused solely on the "egregious injustice" language in *Gardner*.

¶ 11 Mr. Winward does not argue the applicability of either of the exceptions to our preservation rule. Instead, he contends that the "egregious injustice" exception, which he did raise in the district court, is broad enough to encompass his habeas corpus and common law exceptions claims. We disagree. In order to preserve a claim, a party must specifically raise the issue and introduce "supporting evidence or relevant authority." *Warne*, 2012 UT 13, ¶ 16, 275 P.3d 238 (internal quotation marks omitted). In

his appellate brief to this court, Mr. Winward clearly articulates supporting authority for his unpreserved arguments, citing to our constitutional habeas corpus provision, as well as several cases articulating the common law exceptions that he seeks to apply for the first time on appeal. Yet he failed to specifically raise these issues and provide any supporting authority in the district court. Because Mr. Winward failed to preserve these arguments, we will not address them for the first time on appeal.

## II. WE AFFIRM THE DISMISSAL OF MR. WINWARD'S SIX CLAIMS FOR POST–CONVICTION RELIEF BECAUSE HE HAS NOT ESTABLISHED THAT HE WOULD QUALIFY FOR AN EXCEPTION TO THE PCRA'S TIME BAR

¶ 12 The PCRA "establishes the sole remedy for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies, including a direct appeal." UTAH CODE § 78B–9–102(1).[1] Under the PCRA, "[a] petitioner is entitled to relief only if the petition is filed within one year after the cause of action has accrued." *Id.* § 78B–9–107(1).[2] In this case, Mr. Winward's cause of action accrued on the date of "the entry of the denial of the petition for writ of certiorari."[3] *Id.* § 78B–9–107(2)(d). We denied Mr. Winward's petition for certiorari on October 21, 1997. Thus, the statute of limitations on Mr. Winward's post-conviction claims expired in October 1998. But Mr. Winward did not file his petition for post-conviction relief until April 2009, more than ten years after the limitations period had expired.

¶ 13 Mr. Winward acknowledges that his petition is procedurally barred by the PCRA's one-year statute of limitations, but

1. The PCRA was amended in 2008 to renumber the Act and replace the phrase "a substantive legal remedy" with "the sole remedy." *Compare* UTAH CODE § 78–35a–102(1) (2007) *with* UTAH CODE § 78B–9–102(1) (2009). Because Mr. Winward filed his petition for post-conviction relief in 2009, we apply the statute as it read in 2009.

2. The PCRA does provide a tolling exception to the one-year time bar. Under this exception, "[t]he limitations period is tolled for any period

during which the petitioner was prevented from filing a petition due to state action in violation of the United States Constitution, or due to physical or mental incapacity." *Id.* § 78B–9–107(3). Mr. Winward does not argue that this tolling provision applies to his case.

3. This is true with the exception of one of Mr. Winward's claims. *See infra* section III.

he argues that our opinion *Gardner v. State,* 2010 UT 46, 234 P.3d 1115, recognized an "egregious injustice" exception to the PCRA's procedural bars and that this exception applies here. The State does not challenge the existence of such an exception but argues that any such exception would not apply to Mr. Winward. We agree and hold that Mr. Winward has failed to demonstrate that he would qualify for any such exception.

¶ 14 In *Gardner v. State,* we explicitly declined to decide whether any exception to the PCRA's procedural bars survived the 2008 amendments to the PCRA. 2010 UT 46, ¶¶ 93–94, 97, 234 P.3d 1115. In *Gardner,* the defendant argued that "the Utah Constitution confers on this court authority, which cannot be displaced by statute, to examine the merits of a claim that is otherwise procedurally barred." *Id.* ¶ 90. We detailed the history of the PCRA, rule 65C of the Utah Rules of Civil Procedure, and the common law exceptions to the PCRA's procedural bars both before and after the 2008 PCRA amendments. *Id.* ¶¶ 91–93. We then noted that

> [i]n the time since these amendments, we have not examined whether the PCRA and Rule 65C now wholly accommodate the full measure of our constitutional authority or whether the Utah Constitution requires that we be able to consider, in some cases, the merits of claims otherwise barred by the PCRA.

*Id.* ¶ 93.

¶ 15 In *Gardner,* "[t]he State acknowledge[d] that this court retains constitutional authority, even when a petition is procedurally barred, to determine whether denying relief would result in an egregious injustice." *Id.* Nonetheless, the State urged that "we need not address this question, which has clear constitutional implications, because regardless of the boundaries of this court's authority to apply an exception to the procedural rules of the PCRA, Mr. Gardner ha[d] failed to prove that any such exception would apply to him." *Id.* We agreed with the State, reasoning that this argument was "in accord with our obligation to avoid addressing constitutional issues unless required to do so." *Id.* (internal quotation marks omitted). Un-

der this logic, we declined to "define the full extent of our authority to remedy an egregious injustice, because whatever the extent of that authority might be, Mr. Gardner ha[d] failed to persuade us that we ought to invoke it in [his] case." *Id.* ¶ 94. Ultimately, we "d[id] not answer the constitutional question the parties raise[d]," noting that "regardless of the scope of this court's authority to apply an exception to the procedural and limitations bars of the PCRA, we ... decline[d] to exercise that authority in [Mr. Gardner's] case." *Id.* ¶ 97.

¶ 16 Mr. Winward argues that our language in *Gardner* acknowledged a constitutionally based exception to the PCRA's procedural bars where there is an "egregious injustice," and that this exception applies to his case. As was the case in *Gardner,* the State has not contested the existence of an "egregious injustice" exception to the PCRA's procedural limitations and neither party has briefed the issue. *See id.* ¶ 93.

¶ 17 It would be improvident for us to address our constitutional authority to consider the merits of claims that are barred by the PCRA's procedural limitations in a case that does not raise a meritorious claim. *See id.* ¶¶ 93–97. Therefore, as a preliminary matter, we articulate a framework for considering a petitioner's claim that he qualifies for an exception to the PCRA's procedural bars.

¶ 18 First, as a threshold matter, a petitioner must prove that his case presents the type of issue that would rise to the level that would warrant consideration of whether there is an exception to the PCRA's procedural bars. *See id.* ¶¶ 93–94. To satisfy this threshold question, he must demonstrate that he has a reasonable justification for missing the deadline combined with a meritorious defense. *See id.* ¶ 94. Only after meeting this threshold requirement will we even consider the existence of an exception to the PCRA. *See id.* ¶¶ 93–94. Indeed, if a petitioner's case is so weak that it fails to meet this threshold consideration, it would be unwise for us to consider our constitutional authority to recognize an exception to the PCRA. In a case where a petitioner can demonstrate that his case meets this threshold consideration, the petitioner must then

fully brief the particulars of this exception. Such briefing must include an articulation of the exception itself, its parameters, and the basis for this court's constitutional authority for recognizing such an exception. Finally, a petitioner must demonstrate why the particular facts of his case qualify under the parameters of the proposed exception. Under this framework, the petitioner bears the heavy burden of demonstrating that his case presents such significant issues that we should address our constitutional authority to consider exceptions to the PCRA's procedural bars. This framework and its threshold consideration will ensure that we follow "our obligation to avoid addressing constitutional issues unless required to do so." *Id.* ¶ 93 (internal quotation marks omitted).[4]

¶ 19 As was the case in *Gardner*, Mr. Winward has failed to meet this threshold test. *See id.* ¶¶ 93–94. Therefore, as in *Gardner*, we need not address our constitutional authority to recognize an exception to the PCRA's procedural bars. *See id.*

▪▪▪ ¶ 20 To prove that his case meets the threshold test, "a petitioner must persuade the court that, given the combined weight of the meritoriousness of the petitioner's claim and the justifications for raising it

late," the court should consider recognizing an exception to the PCRA's procedural rules. *Id.* ¶ 94 (citing *Adams v. State*, 2005 UT 62, ¶ 16, 123 P.3d 400).[5] This is a flexible test, and courts must "give appropriate weight to each of those factors according to the circumstances of a particular case." *Adams*, 2005 UT 62, ¶ 16, 123 P.3d 400. Ultimately, "[t]he petitioner bears the burden of pointing to sufficient factual evidence or legal authority to support a conclusion of meritoriousness." *Id.* ¶ 20. This means that the petition must have "an arguable basis in fact," which would "support a claim for relief as a matter of law." *Id.* ¶ 19 (internal quotation marks omitted); UTAH R. CIV. P. 65C(h)(2)(A)-(B).

¶ 21 At the outset, Mr. Winward fails to present a reasonable justification for raising his claims more than ten years after the statute of limitations had expired. Mr. Winward argues that he was reasonably justified in failing to meet the PCRA's one-year statute of limitations because he received ineffective assistance of counsel and because the legal resources available to him as an incarcerated defendant were insufficient. But the mere allegation that counsel was ineffective is not a reasonable justification for missing the PCRA's time limitations.[6] Indeed, a rec-

---

4. The concurrence criticizes the majority for not ordering supplemental briefing on this issue. *Infra* ¶¶ 45, 59 n. 11. However, this court is not in the practice of ordering supplemental briefing on an argument not raised by either party. In *Gardner v. State*, we flagged the issue but declined to decide it. 2010 UT 46, ¶¶ 93–94, 97, 234 P.3d 1115. The State was therefore well aware of the issue but made a strategic decision not to raise it in this case. It would be unprecedented for us to give the parties a second bite at the apple by ordering supplemental briefing on an issue that they both declined to raise. And even assuming that it might have been proper to order supplemental briefing on the "egregious injustice" issue, the fact remains that we declined to do so. It would therefore be imprudent to now resolve this extremely important issue without the benefit of adversarial briefing.

5. Our decision in *Adams* does not define the parameters of a new "egregious injustice" exception. Rather, we cite to *Adams* as a contextual tool for determining whether a petitioner qualifies under the threshold consideration. Indeed, if a petitioner cannot prove that he would prevail under *Adams*'s former interest of justice exception, which we expressly abandoned after the

2008 amendments to the PCRA, then a petitioner certainly cannot qualify under a more rigorous standard such as "egregious injustice." *See Gardner v. State*, 2010 UT 46, ¶ 91, 234 P.3d 1115 (noting that the 2008 PCRA amendments appear to have extinguished the "interest of justice" exception.) The concurrence criticizes our use of the "now-defunct" interest of justice exception. *Infra* ¶¶ 48–49, 53. However, in a case like this where the petitioner has demonstrated no injustice, clearly no "egregious injustice" could exist. Because there is *no* injustice in the case before us, we are not called upon to define the parameters of any possible "egregious injustice" exception.

6. Mr. Winward cites to our decision in *Adams v. State*, 2005 UT 62, 123 P.3d 400, to support his argument that ineffective assistance of counsel justifies his missing the PCRA's one-year time bar. How ever, unlike the defendant in *Adams*, Mr. Winward does not have a meritorious ineffective assistance of counsel claim based on an allegation of legal innocence. *See id.* ¶¶ 25–26. And as we noted in *Adams*, the weight we give to a justification for a petitioner's untimely filing will vary "according to the circumstances of a particular case." *Id.* ¶ 16.

ognition that the mere allegation of ineffective assistance of counsel would justify an exception to the statute of limitations would create an exception that would swallow the rule. And Mr. Winward has not provided any facts to support his claim regarding the ineffectiveness of his counsel or the insufficiency of the legal resources available to incarcerated defendants. Mr. Winward does not allege that he attempted to utilize the legal resources at his disposal during the decade since his incarceration. And he admits that he never even attempted to utilize the contract attorneys available at the prison to review the claims of incarcerated defendants. Significantly, he provides no justification as to why it took over a decade to prepare his petition or why he could not have filed his claims sooner. In sum, Mr. Winward has failed to proffer any reasonable justification for missing the PCRA's statute of limitations. This failure convinces us that no matter what the scope of any "egregious injustice" exception to the PCRA, Mr. Winward does not qualify for it.

¶ 22 Additionally, although Mr. Winward alleges six claims for relief,[7] he fails to "point[ ] to sufficient factual evidence or legal authority to support a conclusion of meritoriousness" on any one of his claims. *Adams,* 2005 UT 62, ¶ 20, 123 P.3d 400. He argues that he received ineffective assistance of counsel because his trial counsel: (1) failed to present evidence that one of the victims, T.W., denied allegations of sexual abuse for three months; (2) allowed an allegedly biased juror to sit on the jury; (3) did not call important witnesses from the first trial at the second trial; (4) failed to meet with Mr. Winward prior to trial; (5) failed to call important rebuttal witnesses; and (6) represented him on appeal and failed to raise his own ineffectiveness.[8] To establish a meritorious defense based on the ineffective assistance of counsel, Mr. Winward would have to prove both that he received deficient performance from his trial counsel, and that this deficient performance prejudiced the outcome of his trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). But Mr. Winward cannot demonstrate that his case meets this threshold requirement because his petition does not provide any "arguable basis in fact" that would "support a claim for relief as a matter of law." Utah R. Civ. P. 65C(h)(2)(A)-(B).

¶ 23 Specifically, the facts do not support Mr. Winward's claim that his trial counsel failed to present evidence that one of the victims, T.W., denied allegations of sexual abuse for three months. In fact, the record reveals that Mr. Winward's trial counsel cross-examined T.W. extensively on this issue and elicited testimony from T.W. in which T.W. conceded that he had denied the accusations for an extended period of time. And these facts do not support a legal claim for relief because Mr. Winward cannot demonstrate he was prejudiced by this alleged failure. Even had the jury entirely discredited T.W.'s testimony, there was sufficient evidence from the other two victims' testimony to support Mr. Winward's conviction.

¶ 24 Similarly, the facts do not support Mr. Winward's second claim that his attorney was ineffective in allowing an allegedly biased juror to sit on the jury. Mr. Winward has not shown sufficient facts to rebut the presumption that "trial counsel's lack of objection to, or failure to remove, a particular juror is . . . the product of a conscious choice or preference." *State v. Litherland,* 2000 UT 76, ¶ 20, 12 P.3d 92. And Mr. Winward fails to cite to any facts to rebut this presumption. *See id.* ¶ 25 (listing three ways a defendant may rebut the presumption).

---

7. In total, Mr. Winward's original petition included eight claims for relief. In addition to the six claims addressed above, Mr. Winward also contended that he received ineffective assistance of counsel during the plea bargaining process when his counsel failed to adequately explain the State's plea offer, and he argued that all of his trial counsel's errors amounted to cumulative error. Mr. Winward's argument regarding ineffective assistance of trial counsel during the plea bargaining process is addressed below. *See infra* section III. And because Mr. Winward has failed to allege a meritorious basis for his other claims, *infra* ¶¶ 22–27, we need not address his cumulative error argument.

8. Because we conclude that Mr. Winward did not receive ineffective assistance from his trial counsel, we need not address Mr. Winward's argument regarding his trial counsel's ineffective assistance on appeal.

¶ 25 Mr. Winward also fails to allege facts that would support a legal basis for relief with respect to his claim that he received ineffective assistance of counsel when his trial counsel failed to call important witnesses from the first trial at the second trial. In fact, the testimony that Mr. Winward claims resulted in a hung jury in his first trial was read into evidence during the second trial. Therefore, Mr. Winward cannot show that he was prejudiced by this allegedly deficient performance.

¶ 26 Mr. Winward's fourth claim, that his trial counsel performed deficiently by failing to meet with Mr. Winward prior to the second trial, also fails because Mr. Winward has failed to establish any facts supporting this claim. Actually, the record establishes that Mr. Winward's trial attorney met with him extensively prior to and during his first trial. And, in any event, we have consistently "refused to hold that counsel is ineffective based on the amount of time counsel spent working on the case or consulting with a client." *Nicholls v. State*, 2009 UT 12, ¶ 38, 203 P.3d 976.

¶ 27 Mr. Winward's fifth claim alleges that he received ineffective assistance of counsel when his trial counsel failed to call important rebuttal witnesses, including a forensic child psychologist, a medical expert, and T.W.'s caseworker. But this claim does not allege a viable claim for relief because an "invitation to speculate" about unspecified testimony "cannot substitute for proof of prejudice." *State v. Arguelles*, 921 P.2d 439, 441 (Utah 1996).[9]

¶ 28 "[G]iven the combined weight of the meritoriousness of [his] claim[s] and the justifications for raising [them] late," Mr. Winward has failed to persuade us that this case presents any issue that would justify our consideration of whether to recognize an exception to the PCRA's procedural bars. *See Gardner*, 2010 UT 46, ¶ 94, 234 P.3d 1115. And he has utterly failed to brief the parameters of his proposed "egregious injustice" exception. Instead, he relies on a misreading of our decision in *Gardner*, arguing that

*Gardner* recognized an "egregious injustice" exception. But *Gardner* clearly declined to address whether there is an "egregious injustice" exception to the PCRA. *See id.* ¶¶ 93–94. And Mr. Winward fails to cite to any constitutional authority supporting any such exception. After reviewing Mr. Winward's claims and supporting legal authority, we are convinced that no injustice, let alone an "egregious injustice," will result from applying the procedural bar. *See id.* ¶ 94. Because Mr. Winward has not met this threshold requirement, we affirm the district court's dismissal of these claims under the statute of limitations.

### III. MR. WINWARD MAY HAVE A NEWLY ACQUIRED CLAIM FOR RELIEF

¶ 29 As noted above, the PCRA creates a one-year statute of limitations. *See* UTAH CODE § 78B–9–107. With one possible exception, Mr. Winward's claims accrued on "the entry of the denial of the petition for writ of certiorari," which occurred more than ten years ago. *See id.* § 78B–9–107(2)(d). The possible exception is Mr. Winward's claim that his counsel provided ineffective assistance during the plea bargaining process.

¶ 30 When the U.S. Supreme Court announces a new rule that provides a petitioner with a newly recognized cause of action, he may file a motion to vacate his sentence within one year from the date of the decision. UTAH CODE §§ 78B–9–104(1)(f)(i), –107(1), –107(2)(f). Specifically, section 78B–9–104(1) states:

> [A] person who has been convicted and sentenced for a criminal offense may file an action in the district court of original jurisdiction for post-conviction relief to vacate or modify the conviction or sentence [if]:
>
> . . . .
>
> (f) the petitioner can prove entitlement to relief under a rule announced by the United States Supreme Court . . . after

---

9. Because Mr. Winward has not been able to prove his claims for ineffective assistance of trial counsel, we need not address his remaining claims of cumulative error and ineffective assistance of counsel on appeal.

conviction and sentence became final on direct appeal, and that:

(i) the rule was dictated by precedent existing at the time the petitioner's conviction or sentence became final. . . .

*Id.* § 78B–9–104(1). Where a petitioner can meet the requirements of subsection 104, then his cause of action under the PCRA expires one year from "the date on which the new rule described in Subsection 78B–9–104(1)(f) is established." *Id.* § 78B–9–107(1), (2)(f).

¶ 31 One of Mr. Winward's claims for relief is that he received ineffective assistance of counsel during the plea bargaining process. Specifically, Mr. Winward argues that he received ineffective assistance when his trial counsel failed to adequately explain the State's plea offer. In their initial briefing to this court, both parties relied on our opinion in *State v. Greuber,* 2007 UT 50, 165 P.3d 1185, to define the scope of a defendant's right to effective assistance of counsel during the plea bargaining process.[10] However, after their briefing was complete, the U.S. Supreme Court issued two companion cases that overrule our principal holding in *Greuber. See Missouri v. Frye,* —— U.S. ——, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012); *Lafler v. Cooper,* —— U.S. ——, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). This is significant because, in his brief to this court, Mr. Winward requested that we "change the rule" this court adopted in *Greuber* and instead "recognize that ineffectiveness at the plea stage is independent of the trial stage."

¶ 32 In *Greuber,* we addressed the scope of the right to effective assistance of counsel during the plea bargaining process when a criminal defendant rejects a favorable plea offer and is later convicted of a more serious charge after a fair trial. 2007 UT 50, ¶¶ 4, 13, 18, 165 P.3d 1185. In *Greuber,* the defendant argued that he had received ineffective

assistance of counsel during the plea bargaining process because his attorneys failed to review certain evidence that would have undermined their theory of the case and would have incentivized Mr. Greuber to accept a plea deal. *Id.* ¶ 5. We dismissed Mr. Greuber's claim for ineffective assistance of counsel, concluding that "while [he] did possess the right to effective assistance of counsel during the plea process, he could not ultimately have been prejudiced . . . because he received a trial that was fair—the fundamental right that the Sixth Amendment is designed to protect."[11] *Id.* ¶ 11. We reasoned that "[i]f a defendant has been convicted at a fair trial after rejecting, with the assistance of counsel, the plea opportunity, there is nothing 'unreliable' or 'fundamentally unfair' about imposing a sentence based on the conviction." *Id.* ¶ 13 (quoting *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

¶ 33 The U.S. Supreme Court's recent opinion in *Lafler v. Cooper,* —— U.S. ——, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), rejected this reasoning. The Court announced that the Sixth Amendment right to counsel extends to pretrial plea negotiations and that any deficiency cannot be redressed by a subsequent fair trial. *Id.* at 1385–88. In *Lafler,* the criminal defendant, Mr. Cooper, rejected a plea bargain based on counsel's deficient advice and was subsequently convicted and received a more severe sentence than that offered in the plea. *Id.* at 1383–84. The Court held that this amounted to ineffective assistance of counsel at the plea bargaining stage. *Id.* at 1385–88. The Court determined that "[e]ven if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence." *Id.* at 1386. The Court therefore held that

---

**10.** The day before we heard oral argument in this case, the State supplemented its briefing with the U.S. Supreme Court opinion in *Lafler v. Cooper,* —— U.S. ——, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), pursuant to rule 24(j) of the Utah Rules of Appellate Procedure.

**11.** In reaching this conclusion, we cited two prior cases rejecting the notion that criminal defen-

dants have a constitutional right to effective counsel at the plea bargaining stage when the case resulted in a fair trial. *See Greuber,* 2007 UT 50, ¶ 10, 165 P.3d 1185 (quoting *State v. Geary,* 707 P.2d 645, 646 (Utah 1985)) (citing *State v. Knight,* 734 P.2d 913, 919 n. 7 (Utah 1987)).

[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.

*Id.* at 1387.

¶ 34 In reaching this conclusion, the Court rejected the notion that "there can be no finding of *Strickland* prejudice arising from plea bargaining if the defendant is later convicted at a fair trial." *Id.* at 1385. *Compare Greuber,* 2007 UT 50, ¶ 11, 165 P.3d 1185 (noting that Mr. Greuber "could not ultimately have been prejudiced ... because he received a trial that was fair—the fundamental right that the Sixth Amendment is designed to protect"). The Court also rejected the view "that the sole purpose of the Sixth Amendment is to protect the right to a fair trial." 132 S.Ct. at 1385. Rather, it observed that "[t]he constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice." *Id.* And the Court reiterated that it "has not followed a rigid rule that an otherwise fair trial remedies errors not occurring at the trial itself." *Id.* at 1386.

¶ 35 Because the U.S. Supreme Court's decision in *Lafler* overrules our holding in *Greuber,*[12] Mr. Winward may be entitled to file a new post-conviction claim under the PCRA's statute of limitations. To qualify under the statute, Mr. Winward must prove two things: (1) "entitlement to relief under a rule announced by the United States Supreme Court ... after conviction and sentence became final on direct appeal," and (2) that "the rule was dictated by precedent existing at the time the petitioner's conviction or sentence became final." UTAH CODE § 78B–9–104(1)(f). The question of whether Mr. Winward satisfies these conditions has not been briefed to this court and we therefore decline to address it.

¶ 36 We vacate the district court's dismissal of Mr. Winward's claim of ineffective assistance of counsel during the plea bargaining process and remand the matter to the district court where Mr. Winward may file a motion to vacate or amend his sentence under section 78B–9–104(1)(f) of the Utah Code. Under the statute, Mr. Winward must file an action to vacate or modify his sentence "in the district court of original jurisdiction for post-conviction relief" within one year from the date of the U.S. Supreme Court's decision in *Lafler.*[13] *Id.* § 78B–9–104(1).

## CONCLUSION

¶ 37 Our preservation rules preclude consideration of Mr. Winward's habeas corpus and common law exception arguments, and Mr. Winward has failed to demonstrate that he qualifies for any "egregious injustice" exception to the PCRA. We therefore affirm the dismissal of Mr. Winward's claims with the exception of his claim for ineffective assistance of counsel during the plea bargaining process. Under the U.S. Supreme Court's recent opinion in *Lafler v. Cooper,* —— U.S. ——, 132 S.Ct. 1376, 182 L.Ed.2d 398, Mr. Winward may have a newly recognized claim, which may be redressed under section 78B–9–104(1)(f)(i). We therefore remand for consideration of such a claim.

Justice PARRISH authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, and Justice DURHAM joined.

Justice LEE authored a concurring opinion.

---

**12.** We pause to note that at least a portion of our decision in *Greuber* may remain good law. In *Lafler,* the Court noted that "[p]rinciples elaborated over time in decisions of state and federal courts, and in statutes and rules, will serve to give more complete guidance as to the factors that should bear upon the exercise of the judge's discretion" in fashioning the appropriate remedy when it is found that a defendant received ineffective assistance of counsel during the plea bargaining process. 132 S.Ct. at 1389. Thus, this court's decision in *Greuber* may remain good law to the extent that it guides lower courts in fashioning a remedy.

**13.** Because Mr. Winward's claim for ineffective assistance during the plea bargaining process may no longer be barred under the statute of limitations, we need not address whether this claim qualifies for any other potential exception to the PCRA's procedural bar.

Justice LEE, concurring in the judgment:

¶ 38 I agree with the judgment of the court but write separately to highlight a disagreement with the majority's analysis on a threshold issue. Specifically, though I would affirm the dismissal of Winward's PCRA petition as time-barred, I would do so by expressly repudiating the "egregious injustice" exception invoked by the court.

¶ 39 We have no authority to apply such an exception. It is a remnant of a long-since repealed section of the PCRA,[1] which we of course have no business reviving through our case law. Our authority to invoke exceptions not codified in the PCRA is necessarily limited to—and defined by—our interpretation of the constitutional provisions that dictate the scope of the right of post-conviction review by extraordinary writ. Because there is no viable challenge to PCRA's time bar before us, we should apply the statute as written and decline the invitation to invoke presumed exceptions to it.

¶ 40 The majority's objections to this approach are twofold: (a) the constitutional objections to the PCRA's time-bar provision were not raised by Winward below and were thus waived; and (b) it is "improvident" to address constitutional questions that are not amply briefed by the parties, and preferable to avoid the matter by assuming *arguendo* the power to apply an exception (styled a "threshold test") set forth in a repealed statutory provision. I disagree with both points.

¶ 41 Though Winward failed to preserve an express constitutional challenge to the PCRA's time bar, *see supra* ¶¶ 8–11, his invocation of the "egregious injustice" exception to the PCRA rests on an implied—but nonetheless clear—constitutional premise. Our authority (if any) to recognize an exception outside the bounds of the PCRA must necessarily be rooted in the constitution. There is no other possible basis for an extra-statutory exception. By invoking the "egregious injustice" exception, therefore, Winward necessar-

ily raised the question whether there is any constitutional basis for it.

¶ 42 Our precedents are hardly a barrier to reaching this question—or for deeming Winward to have waived it. Although we have recently proceeded on the *arguendo* assumption of judicial power to invoke exceptions outside the statute, our cases neither identify any basis to do so nor resolve the matter conclusively. Under the circumstances, the parties can hardly be faulted for failing to analyze squarely the question of the constitutional basis for our authority in this area.

¶ 43 Now that this fundamental question has been identified (as it was at oral argument in this case), however, we can hardly proceed without addressing it on its merits. If we are to *apply* an "egregious injustice" exception, we must first identify the nature of our authority to do so. We cannot defensibly find such an exception unsatisfied without describing its content, and we cannot describe its content without articulating its basis in law. A decision in this case accordingly requires an analysis of this question, which is properly—if implicitly and without ample briefing—presented to us.

¶ 44 The court's contrary conclusion purports to find root in a principle of judicial restraint—of *avoiding* the constitutional question of the scope of our authority to invoke extra-statutory exceptions to the PCRA's time-bar rule in light of the parties' inadequate briefing. *Supra* ¶ 18. Yet in its application, the court necessarily (if implicitly) decides the very question it purports to avoid. Specifically, in concluding that Winward cannot satisfy the "egregious injustice" exception, the court is necessarily invoking a constitutional prerogative to define the scope of such an exception. This is not restraint. It is an effective assumption of power—an assumption in a black box without any indication of its basis in law.

¶ 45 I concede the need for briefing addressed more explicitly to the question of the constitutional source of our authority to rec-

---

**1.** *Compare* Utah Code § 78–35a–107(3) (1996) ("If the court finds that the interests of justice require, a court may excuse a petitioner's failure to file within the time limitations."), *with* UTAH CODE § 78B–9–107(3) (2008) ("The limitations period is tolled for any period during which the petitioner was prevented from filing a petition due to state action in violation of the United States Constitution, or due to physical or mental incapacity.").

ognize an exception to the PCRA's time-bar provisions. For that reason I would have entered an order calling for such briefing in this case. My colleagues obviously saw the matter differently, preferring instead to postpone such briefing and analysis for a future case.[2] That is their prerogative. But having made that decision, the court is in no position to avoid grappling with this question on the ground that it was inadequately briefed.

¶ 46 To resolve the matters before us on the basis of law, we must address forthrightly the scope of our constitutional authority, if any, to invoke exceptions to the PCRA. It makes no legal sense to refuse to do so. And logically we cannot decide this case on a middle ground of "restraint" without effectively deciding the key constitutional question.

¶ 47 I write separately to express my disagreement with the court's methodology and to identify the grounds on which I would affirm the district court. First, I would reject Winward's "egregious injustice" argument on the ground that we lack the power to perpetuate a repealed statutory standard or to engage in common-law regulation in a field occupied extensively by a statute. Second, I would clarify that any basis for an "egregious injustice" exception must be located in a provision of the constitution. Finally, I would find that there is no constitutional ground for any such exception, and would affirm on that basis.

## I

¶ 48 The 2008 amendments to the PCRA prescribe the "sole remedy" for post-conviction review of a conviction or sentence, "replac[ing] all prior remedies for review, including extraordinary or common law writs." UTAH CODE § 78B–9–102(1) (2008); In so doing, these amendments also repealed a preexisting statutory exception to the PCRA's time bar—one that allowed courts, in the "interests of justice," to "excuse a petitioner's failure to file" a petition within the timeframe prescribed by statute. UTAH CODE § 78–35a–107(3) (1996).

¶ 49 In *Peterson v. Kennard*, we acknowledged that these amendments "appear[ ] to have extinguished our common law writ authority." 2008 UT 90, ¶ 16 n. 8, 201 P.3d 956. Yet we have never definitively disclaimed any lingering judicial power to recognize an extra-statutory exception to the time bar imposed by the PCRA. It is time to do so now. No such power can persist in the face of a constitutional exercise of legislative power to regulate the process of post-conviction review. If the PCRA's time bar is constitutional (as I believe it is for reasons explained below), our judicial power is constrained to the interpretation and application of the statute. We have no common-law power to regulate in the face of a comprehensive statute, and certainly no authority to revive repealed legislation.

¶ 50 That conclusion is not at all undermined by the fact that the post-conviction habeas right is protected by the constitution. Constitutionally guaranteed rights are not impervious to regulation.[3] And as we have recently emphasized, the power to regulate constitutional claims unquestionably encom-

---

**2.** The court's call for better briefing in future cases, *supra* ¶ 18, implies a concession to the inadequacy of briefing here. As the majority acknowledges, the parties here have failed to address at any length the nature of "the [egregious injustice] exception itself, its parameters, and the basis for this court's constitutional authority for recognizing such an exception." *Supra* ¶ 18. But if such briefing is important in future cases, it is no less essential here. The "framework" the court provides for future litigants could easily have been set forth in a supplemental briefing order in this case. And in my view we had an obligation to order such briefing here. Both Winward and the State are entitled to have their dispute resolved in accordance with the law. So our acknowledgement of an inability to do so under the parties' present submissions necessarily requires further briefing—not just in future cases but also here.

**3.** *Cole v. State*, 608 So.2d 1313, 1317–18 (Miss. 1992) ("These statutes of repose apply with full force to all claims and courts cannot refuse to give the statute effect merely because it seems to operate harshly in a given case. The establishment of these time boundaries is a legislative prerogative. That body has the right to fix reasonable periods within which an action shall be brought and, within its sound discretion, determine the limitation period.... It should not be the province or function of this court to intrude upon an area peculiarly within the channel of legislative action.").

passes the right to subject them to time bars. *See Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Horne*, 2012 UT 66, ¶ 52, 289 P.3d 502 (holding that even constitutional claims can be time-barred).[4] That proposition is well settled. It is universally understood that the legislature may impose reasonable limitations on the assertion of federal constitutional rights. *See Michel v. Louisiana*, 350 U.S. 91, 97, 76 S.Ct. 158, 100 L.Ed. 83 (1955); *see also Horne*, 2012 UT 66, ¶ 52, 289 P.3d 502. The same goes for rights rooted in our state constitution. *See Bott v. DeLand*, 922 P.2d 732, 743 (Utah 1996) (stating that rights granted to citizens under the Utah Constitution "are subject to reasonable regulation"), *abrogated on other grounds by Spackman ex rel. Spackman v. Bd. of Educ.*, 2000 UT 87, 16 P.3d 533.[5]

¶ 51 That said, the legislative power to regulate the assertion of constitutional rights is not unlimited. But the limits are defined by the constitution itself. The question, then, is whether the legislature's regulation of rights guaranteed by the constitution somehow runs afoul of a constitutional standard.[6] *See Utah Sch. Bds. Ass'n v. Utah State Bd. of Educ.*, 2001 UT 2, ¶ 11, 17 P.3d 1125 (reiterating that the plenary legislative power is "subject only to the limitations or prohibitions imposed by the state constitution" (internal quotation marks omitted)).

## II

¶ 52 Our authority to override the PCRA's time-bar provisions with an "exception" of our own making is accordingly limited. We possess that power only if it is mandated by the constitution—or, in other words, if the PCRA's time bar is itself unconstitutional. I see no way to decide this case as presented without addressing the threshold question of the source of our power (if any) to promulgate exceptions like the "egregious injustice" standard proffered by Winward. In applying an exception invoked *arguendo*, the court is certainly not "avoiding" this question, *see supra* ¶ 18, in any meaningful sense. It is instead resolving a key question *sub silentio* and without any analysis.

¶ 53 The majority's approach here mirrors that in *Gardner v. State*, 2010 UT 46, ¶¶ 93–97, 234 P.3d 1115, where the court rejected an "egregious injustice" ground for excusing a time bar under the PCRA by concluding that the petitioner had failed to establish that "any such exception would apply to him" even if it was viable. *Supra* ¶ 15 (citing *Gardner*, 2010 UT 46, ¶ 93, 234 P.3d 1115). Following *Gardner*, the "egregious injustice" exception (or "threshold test," as the court now puts it [7]) is deemed to require the petitioner to "persuade the court that, given the combined weight of the meritoriousness of the petitioner's claim and the justifications for raising it late, the court should consider recognizing an exception to the PCRA's procedural rules." *Supra* ¶ 20 (internal quotation marks omitted). That exception, however, is nothing more or less than the statutory "interest of justice" exception to the PCRA set forth in *Adams v. State*, 2005 UT 62, 123

---

4. *See also Int'l Union of Operating Eng'rs, Local No. 3 v. Utah Labor Relations Bd.*, 115 Utah 183, 203 P.2d 404, 408 (1949) ("[N]one of the constitutional guarantees embodied in the first eight amendments to the Constitution of the United States are absolute rights. All of them are subject to some regulation by the state.").

5. *See, e.g., People v. Wiedemer*, 852 P.2d 424, 435 (Colo.1993) (en banc) (recognizing that reasonable time limitations may be placed on the exercise of constitutional rights); *Davis v. State*, 443 N.W.2d 707, 709 (Iowa 1989) (same); *Cole*, 608 So.2d at 1318–19 (same); *Bartz v. State*, 314 Or. 353, 839 P.2d 217, 224–25 (1992) (same).

6. *See also Utah Fuel Co. v. Indus. Comm'n*, 73 Utah 199, 273 P. 306, 311 (1928) (per curiam) ("[It] is the view of a majority of the court ... that the act fixing the time within which an application may be made to this court for the writ [of certiorari] does not infringe upon the judicial powers of this court conferred upon it by the Constitution....").

7. The majority never explains—and I fail to understand—how a repealed statutory exception can become a "threshold test" for determining whether petitioners have asserted a viable claim to an uncodified exception to the statutory time-bar. We cannot continue to assume that language the legislature chose to excise from a statute has any continuing relevance to this question, either as an "exception" in its own right or as a "test" to determine whether we should decide if an exception exists. Surely the terminology is irrelevant, as an extra-statutory "threshold test" is no more compatible with the statute than an extra-statutory "exception."

P.3d 400, which in turn was based on a now-defunct version of the PCRA, UTAH CODE § 78–35a–107(3) (2002).

¶ 54 The majority has hardly avoided the question of the basis for our authority to prescribe exceptions to the PCRA. It has decided that question for the purpose of resolving this case, and has done so by reviving the language of a provision repealed by our legislature. I see no way to justify that as an act of judicial restraint. It seems to me to be quite the opposite. And the application of the repealed statutory provision is in no way an act of avoidance. We cannot logically assert that a petitioner who fails to satisfy the repealed statutory standard "certainly cannot qualify" under an undefined "egregious injustice" exception. *See supra* ¶ 20 n. 5. That is true if and only if the latter standard is more rigorous than that repealed by the legislature. But we have no way to know that unless and until we say what we mean by "egregious injustice"—which of course we cannot do without identifying its legal basis (in the constitution or elsewhere).

¶ 55 Thus, the court has not stopped short of defining the nature and scope of the "egregious injustice" exception so much as it has done so *sub rosa*. Such a move is troubling.[8]

We are oath bound to decide cases in accordance with the law. That oath subsumes a duty to identify the law that governs our decisions. And the failure to do that leaves us open to the criticism that other factors may be guiding our decisionmaking.[9] That possibility mandates an analysis of the legal basis of an "egregious injustice" exception before we apply it.

¶ 56 If we are to apply that exception, we must start with an analysis of any basis for it in the constitution. For this reason, Winward preserved a very narrow constitutional challenge by arguing that an "egregious injustice" exception exists and should be applied to him. My analysis of that question yields a straightforward answer: We have no constitutional authority to prescribe an extra-statutory "egregious injustice" exception of any sort, as the PCRA's time-bar provisions fall comfortably within the ample authority the legislature retains to regulate post-conviction relief.

### III

¶ 57 Under the Utah Constitution, the domain of the legislative and judicial authority over post-conviction review is defined by the Suspension Clause.[10] This provision states

---

8. If resolving these issues without adequate briefing is "imprudent," *supra* ¶ 18 n. 4, then doing so *sub silentio* and without any analysis is much more so. We cannot reasonably shun supplemental briefing, moreover, on the ground that the legal basis for an "egregious injustice" exception was "not raised by either party." *Supra* ¶ 18 n. 4. Winward necessarily raised the issue by filing a PCRA petition rooted in this exception. We cannot rule on that petition without deciding the basis, if any, for the exception.

9. I say that without any intention to attribute any extra-legal grounds for the court's decision today. I have no reason to doubt my colleagues' good-faith attempt to resolve this case in accordance with the law as they perceive it. My point is just that the "law" set forth in the court's opinion is undefined in both origin and content, and that an *arguendo* approach of that sort leaves parties in this case and in future cases without any capacity to understand or predict our decisionmaking.

10. The question of how much regulation of the habeas writ is too much is answered in the Constitution, in this instance, only by the Suspension Clause. Winward argues that the legislature cannot impose a conclusive time bar on

his post-conviction relief petition. This amounts to an argument that the legislature's regulation suspends the habeas writ. The only other constitutional provision of any conceivable relevance is the grant of original jurisdiction to this court over extraordinary writs, in article VIII, section 3. But that provision is not implicated in this case. Winward did not present a petition for review in this court. He filed only a PCRA petition in the district court, under the terms of the statute. Our authority here is thus only in our capacity as an appellate court reviewing a PCRA petition filed in the district court. The case thus presents no question whether the PCRA somehow displaces our original jurisdiction under the constitution, given that no such jurisdiction has been invoked.

Winward's other constitutional arguments ask us to strike down the PCRA's time bar under a range of other constitutional provisions, including article 1, section 9 (excessive bail and cruel punishments); article I, section 11 (open courts); article V, section 1 (distribution of powers); article VIII, section 4 (supreme court rulemaking power); and article VIII, section 5 (right of appeal). Even assuming that such arguments are properly before us, they nonetheless fail. A time bar for post-conviction relief simply does not

that "[t]he privilege of the writ of habeas corpus shall not be suspended, unless, in case of rebellion or invasion, the public safety requires it." UTAH CONST. art. I, § 5. That limitation leaves room for the legislature to implement processes and procedures that confine and define habeas review so long as they stop short of a "suspension" of the writ.

¶ 58 Our judicial authority in this field is defined by this same principle. We may invoke exceptions to the regulatory terms of the PCRA if—and only to the extent that—the statute effectively "suspends" the writ of habeas corpus. In that event the PCRA would be unconstitutional, and we would have the authority and the responsibility to identify its unconstitutionality and remedy it by striking down any offending provisions.

¶ 59 I find no plausible basis in the Suspension Clause for striking down the PCRA's time bar—or, conversely, for invoking authority for a judicial exception (for "egregious injustice" or otherwise) to it.[11] The courts considering the constitutionality of time bars like the PCRA's have uniformly upheld them against Suspension Clause challenges.[12] In so doing, they have recognized that "[a]ny legal system, including habeas corpus, requires procedures to implement

it.... [S]o long as those procedures are reasonable for persons who seek redress[,] they do not offend the state constitutional ban on suspending habeas corpus." *Bartz v. State*, 314 Or. 353, 839 P.2d 217, 224 (1992).

¶ 60 Thus, PCRA-like post-conviction procedures are uniformly upheld as constitutional because they are "a reasonable substitute for the writ," *id.* do not "materially impair[ ]" the habeas right, *Davis v. State*, 443 N.W.2d 707, 709 (Iowa 1989), or are neither "inadequate nor ineffective," *Swain v. Pressley*, 430 U.S. 372, 381, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977).[13] Across the board, courts uphold these time bars because they give petitioners a meaningful opportunity to contest their confinement. *See Baker v. Grams*, No. 10–C–412, 2010 WL 4806992, at *3 (E.D.Wis. Nov. 22, 2010) ("[C]ourts have … unanimously upheld the constitutionality of [the PCRA's federal analogue's one-year] limitations period.").

¶ 61 Implicit in these holdings is an important premise regarding the scope of the underlying constitutional right of habeas review. The reasonableness or adequacy of any replacement statutory scheme necessarily depends on the character of the right the original remedy protected. So, some courts

---

implicate any of these provisions. A statute that prescribes time limits for invocation of a judicial remedy cannot possibly amount to cruel punishment, deny all right to appeal, close the courts to petitioners, or infringe on this court's jurisdiction to promulgate rules. Thus, because only the Suspension Clause could invalidate the PCRA's time bar in this case, I confine my discussion to that constitutional provision alone.

11. My analysis of this question is necessarily tentative, given the lack of extensive briefing on this question. But it cannot be dismissed as unnecessary—certainly not by the majority, which *has resolved* the question I am addressing (albeit implicitly and for the sake of argument) while declining to order further briefing on it. Thus, the discussion set forth here is a response to both Winward's insistence that an "egregious injustice" exception exists and the majority's invocation and implicit adoption of that exception. My point is simply that if we accept the propriety of the court's decision to evaluate and apply an extra-statutory exception, it would have to be under the constitution, and Winward's case would fail on its merits under that framework.

12. *See Delaney v. Matesanz*, 264 F.3d 7, 12 (1st Cir.2001) (holding that AEDPA's—the federal analogue to Utah's PCRA—one-year limitation

does not offend the federal Suspension Clause and citing Eleventh, Second, Fifth, and Tenth Circuit Court cases in accord); *Commonwealth v. Zuniga*, 772 A.2d 1028, 1031–32 (Pa.Super.Ct.2001) (upholding one-year statute of limitations on PCRA petitions); *In re Runyan*, 121 Wash.2d 432, 444–45, 853 P.2d 424 (1993) (en banc) (same); *see also People v. Wiedemer*, 852 P.2d 424, 435 (Colo.1993) (en banc) (upholding three-year statute of limitations); *Davis v. State*, 443 N.W.2d 707, 709–10 (Iowa 1989) (same); *Battrick v. State*, 267 Kan. 389, 985 P.2d 707, 714–15 (1999) (upholding thirty-day limitation); *Bartz v. State*, 314 Or. 353, 839 P.2d 217, 224–25 (1992) (holding that 120–day time limit for post conviction collateral attacks did not violate state Suspension Clause); *Potts v. State*, 833 S.W.2d 60, 61–62 (Tenn.1992) (holding that three-year statute of limitations was not an unconstitutional suspension of the writ of habeas corpus).

13. *See also Passanisi v. Dir., Nev. Department of Prisons*, 105 Nev. 63, 769 P.2d 72, 74 (1989) ("The legislature may … impose a reasonable regulation on the writ of habeas corpus, so long as the traditional efficacy of the writ is not impaired.").

require the post-conviction remedy replacing the writ to be a reasonable substitute for the habeas right as it was traditionally or historically understood.[14] And, historically, the habeas writ typically was available only to contest a sentence or conviction imposed by a court lacking adequate jurisdiction. *See, e.g., In re Runyan,* 121 Wash.2d 432, 853 P.2d 424, 430 (1993). Indeed, this was the understanding of the writ when our own constitution was enacted. *See Ex parte Hays,* 15 Utah 77, 47 P. 612, 614 (1897). In one of this court's earliest habeas opinions, we explained that "[w]here a case has been tried in a district court, and the judgment rendered at the trial has been affirmed by the supreme court, such trial and judgment will be presumed to be legal, and cannot be questioned upon habeas corpus for anything except a want of jurisdiction." *Id.*[15] For states recognizing this narrow view, then, post-conviction relief procedures are a reasonable substitute as long as they preserve the "core" of the habeas right: a petitioner's ability to contest the sentencing/convicting court's jurisdiction over his person and over the subject matter of the case.

¶ 62 Other courts have defined the habeas right as encompassing broader contests to executive confinement. *See, e.g., Wiglesworth v. Wyrick,* 531 S.W.2d 713, 717 (Mo. 1976) (en banc). According to the Missouri Supreme Court, for example, "the suspension prohibited relates to denial of the substantive right to have judicial inquiry into the cause of and justification for allegedly illegal detention." *Id.; see State v. Towery,* 143 Ala. 48, 39 So. 309, 309 (1905) ("The 'suspension' of the writ which is prohibited means the denial to the citizen of the right to demand an investigation into the cause of his deten-

tion."). For these courts, habeas is not suspended as long as its replacement leaves petitioners with some reasonable opportunity to have their claims heard on the merits. *See Lucidore v. N.Y. State Div. of Parole,* 209 F.3d 107, 113 (2d Cir.2000).

¶ 63 Ultimately, we need not commit ourselves to either conception of the core habeas right—the narrow jurisdictional inquiry or the broader merits-based one—because the PCRA's procedural requirements appear to be a reasonable substitute under either formulation. Petitioners have ample time before the statute of limitations runs to contest either the court's jurisdiction over them or to begin the process of having their claims heard on the merits. *See Brooks v. Olivarez,* No. C 98–134 MJJ (PR), 1998 WL 474160, at *2 (N.D.Cal. Aug. 5, 1998) ("That one year gives the [petitioner] plenty of time to get to [the] court and leaves room for the inevitable delays in mail, unpredictable lockdowns, as well as interruptions in research and writing time common in prison."). The one-year time bar does not foreclose inquiry into illegal detention or circumscribe it unreasonably. It imposes rational and reasonable processes to make these inquiries manageable and speedy.

¶ 64 I would thus conclude that the PCRA's time bar survives scrutiny under the Suspension Clause. And because our power to override statutes is defined by the extent of its unconstitutionality, I would find that the PCRA stands intact as enacted—and without judicial amendment under an "egregious injustice" exception.

## IV

¶ 65 Although I agree with the result the court reaches, I cannot endorse the majori-

14. *See In re Runyan,* 853 P.2d at 430 ("[T]his court has looked to the scope of the common law privilege at the time of our state suspension clause's enactment as defining the privilege protected by our state constitution."); *State ex rel. Glover v. State,* 660 So.2d 1189, 1196 (La.1995) (same), *abrogated on other grounds by State ex rel. Olivieri v. State,* 779 So.2d 735 (La.2001).

15. *See In re Whitmore,* 9 Utah 441, 35 P. 524, 525 (Utah Terr.1894) ("If the court had jurisdiction of the person of the defendant, and of the subject-matter out of which the alleged contempt arose, then the door for release by means of a

writ of habeas corpus is closed, except it may be in cases where excess of jurisdiction is clearly apparent."); *In re Whetstone,* 9 Utah 156, 36 P. 633, 633 (Utah Terr.1893) (per curiam) (rejecting habeas corpus petition where the court had jurisdiction); *Ex parte Springer,* 1 Utah 214, 214 (Utah Terr.1875) (refusing to grant habeas relief even if the grand jury issuing the indictment was illegal); *Ex parte Dixon,* 1 Utah 192, 193–94 (Utah Terr.1875) (granting habeas relief where the issuing court lacked jurisdiction over the petitioner).

ty's approach. It perpetuates the uncertainty created in *Gardner* and fosters, without deciding, the notion that this court wields some ephemeral power residing between the explicit lines of our constitutional authority. We have no such power. I would decide this case on grounds that clarify that fundamental point.