*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2015 UT 61**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SHANNON GLEN WINWARD,
*Appellant*,

*v.*

STATE OF UTAH,
*Appellee.*

No. 20130743
Filed July 29, 2015

Third District, Salt Lake
The Honorable Katie Bernards-Goodman
No. 090906912

Attorneys:

Thomas M. Burton, Salt Lake City, for appellant

Sean M. Reyes, Att'y Gen., Andrew F. Peterson, Asst. Att'y Gen.,
for appellee

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PARRISH, and JUDGE ORME joined.

Due to his retirement, JUSTICE NEHRING does not participate herein;
COURT OF APPEALS JUDGE GREGORY K. ORME sat.

JUSTICE DENO G. HIMONAS became a member of the Court on
February 13, 2015, after oral argument in this matter, and
accordingly did not participate.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1     This is Mr. Winward's second appeal in a postconviction proceeding he initiated in 2009. On his first appeal, we affirmed the dismissal of most of his claims, concluding they were barred by the statute of limitations of the Post-Conviction Remedies Act (PCRA). *Winward v. State*, 2012 UT 85, ¶ 28, 293 P.3d 259. But we vacated the dismissal on one narrow issue: whether the U.S. Supreme Court's new

decisions in *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), and *Missouri v. Frye*, 132 S. Ct. 1399 (2012), created a new cause of action for Mr. Winward under Utah Code section 78B-9-104(1)(f).

¶2    We conclude now that they did not. *Lafler* and *Frye* announced a new rule, one not "dictated by precedent existing at the time [Mr. Winward's] conviction or sentence became final." UTAH CODE § 78B-9-104(1)(f)(i). Therefore, they do not give rise to a new cause of action under the PCRA, and Mr. Winward's petition must be denied.

## BACKGROUND

¶3    In 1993, Mr. Winward was charged with sodomizing his girlfriend's sons repeatedly over the course of four years and with sexually assaulting a neighbor's child. *See State v. Winward*, 941 P.2d 627, 629 (Utah Ct. App. 1997). His first trial ended in a hung jury. He was tried again and convicted, and his conviction was affirmed by the court of appeals. *Id.* at 636.

¶4    In 2009, Mr. Winward filed a petition for post-conviction relief claiming his counsel had been ineffective in a number of ways, including failing to inform him about a plea bargain the State allegedly offered before the second trial. In response the State argued that Winward's petition was more than a decade late and therefore ought to be dismissed under the PCRA's time bar. The district court agreed, and Mr. Winward appealed.

¶5    We affirmed the dismissal of most of Mr. Winward's claims. *Winward v. State*, 2012 UT 85, ¶ 28, 293 P.3d 259. But before we could issue our decision, the legal landscape changed. The U.S. Supreme Court decided *Lafler v. Cooper* and *Missouri v. Frye*, which established a remedy for defendants who fail to accept a plea offer because of the ineffective assistance of counsel, and who ultimately receive a stricter sentence than was offered under the plea bargain. *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Missouri v. Frye*, 132 S. Ct. 1399 (2012). Because the PCRA recognizes a cause of action based on new Supreme Court decisions, and because Mr. Winward seemed to have alleged facts that might support relief under *Lafler* and *Frye*, we remanded the case to allow Mr. Winward to pursue a claim based on these decisions. *Winward*, 2012 UT 85, ¶ 36.

¶6    Mr. Winward did so, and the State again asked the district court to dismiss his claim under rule 12(b)(6). It gave two reasons for dismissal. First, it argued that *Lafler* and *Frye* do not satisfy the requirements to create a new cause of action under the PCRA because they were not dictated by precedent when Mr. Winward's conviction became final in 1997. Second, it argued that even if the PCRA did allow Mr. Winward to raise a claim under *Lafler* and *Frye*, he had failed to

allege facts sufficient to state such a claim. The court agreed with the State's first argument and dismissed Winward's claim "because no set of facts that he could prove would entitle him to relief." It did not reach the State's second argument.

¶7     Mr. Winward now appeals again, arguing that the district court erred and that he is entitled to relief under *Lafler* and *Frye*. He also raises other arguments, which we will not consider for reasons explained in Part III below.

## STANDARD OF REVIEW

¶8     We review 12(b)(6) dismissals for correctness. *St. Jeor v. Kerr Corp.*, 2015 UT 49, ¶ 6, ___ P.3d ___.

## ANALYSIS

¶9     We affirm the denial of Mr. Winward's claim for the same reason the district court gave in its ruling: *Lafler* and *Frye* do not satisfy the requirements of the PCRA provision under which Mr. Winward claims relief. We then explain our reasons for deciding the case on this basis instead of the alternative grounds the State suggested. Finally, we refuse to consider the remaining arguments Mr. Winward's attorney has raised and, because of his unprofessional prosecution of this appeal, refer him to the Office of Professional Conduct for discipline.

### I. *LAFLER* AND *FRYE* DO NOT GIVE RISE TO A CLAIM UNDER UTAH CODE SECTION 78B-9-104(1)(f)

#### A. *Section 78B-9-104(1)(f)(i) Incorporates Federal Retroactivity Jurisprudence*

¶10     The PCRA allows a petition like Mr. Winward's if

> (f) the petitioner can prove entitlement to relief under a rule announced by the United States Supreme Court, the Utah Supreme Court, or the Utah Court of Appeals after conviction and sentence became final on direct appeal, and that:
>
> (i) the rule was dictated by precedent existing at the time the petitioner's conviction or sentence became final . . . .

UTAH CODE § 78B-9-104(1)(f). In order to state a claim, Mr. Winward must therefore show that *Lafler* and *Frye* were "dictated by precedent existing at the time [his] conviction and sentence became final."[1]

_____

[1] The parties have briefed this point as an issue of "retroactivity," but this label is not quite accurate. Section 104(1)(f) does not purport to

¶11     This language became part of the PCRA in 2008,[2] and we have never before had occasion to interpret it. In doing so now, we note first that section 104(1)(f)(i) is quoted almost verbatim from the U.S. Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288, 301 (1989). Further, we note that by 2008, "dictated by precedent" had become the established federal standard for distinguishing between old rules and new rules for purposes of determining whether a Supreme Court decision applies retroactively on collateral review. *See, e.g.*, *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (quoting *Teague*); *Williams v. Taylor*, 529 U.S. 362, 381 (2000) (same); *Saffle v. Parks*, 494 U.S. 484, 488 (1990) (same). Decisions "not *dictated* by precedent" announce new rules, and apply retroactively on collateral review only in certain narrow circumstances. *Chaidez v.*

---

determine whether Utah courts should apply new Supreme Court decisions retroactively; rather, it determines whether new Supreme Court decisions give rise to a new cause of action under the PCRA. *See* UTAH CODE 78B-9-104(1) ("[A] person who has been convicted . . . *may file an action* . . . upon the following grounds: . . . (f) the petitioner can prove entitlement to relief under a rule announced by the United States Supreme Court . . . after conviction and sentence became final . . . ." (emphasis added)).

A similar distinction exists in federal law. Whether a new Supreme Court decision applies retroactively in habeas cases is determined by the Supreme Court's retroactivity jurisprudence. *See, e.g.*, *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013) (determining the retroactivity of a Supreme Court decision by applying *Teague v. Lane*, 489 U.S. 288 (1989)). But whether a new Supreme Court decision creates an opportunity for prisoners to file a "second or successive habeas corpus application" is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. §§ 2244(b)(2)(A), 2255(h)(2).

Our holding here concerns only the latter sort of issue—whether Mr. Winward's petition is permissible under Utah Code section 78B-9-104(1)(f). We do not reach the question of what retroactivity principles apply in the causes of action listed in subsections 78B-9-104(1)(a) through 104(1)(e). We do note, however, that the Supreme Court's retroactivity precedents may possibly act as a floor, requiring us to allow retroactive application of at least those precedents that would be applied retroactively in a federal habeas case. *See, e.g.*, *State v. Whitfield*, 107 S.W.3d 253, 267 (Mo. 2003) ("It is up to each state to determine . . . [which U.S. Supreme Court decisions are retroactive] on collateral review. So long as the state's test is not narrower than that set forth in [the Supreme Court's retroactivity cases], it will pass constitutional muster."). We will deal with these issues if and when they arise.

[2] 2008 Utah Laws 1845, 1845–46.

*United States*, 133 S. Ct. 1103, 1107 (2013) (quoting *Teague*, 489 U.S. at 301). However, decisions that are dictated by precedent—those that merely apply "'the principle that governed' a prior decision to a different set of facts"—are retroactive on collateral review so long as the precedent they rest on predates the conviction being challenged. *Id.* (quoting *Teague*, 489 U.S. at 307).

¶12    "[W]hen a word or phrase is 'transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.'" *Maxfield v. Herbert*, 2012 UT 44, ¶ 31, 284 P.3d 647 (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 COLUM. L. REV. 527, 537 (1947)). Seeing no contrary intent in the statute's text or history, we therefore conclude that the legislature intended section 104(1)(f) to allow new PCRA petitions based on decisions that would be considered "dictated by precedent," and therefore retroactive, under the U.S. Supreme Court's decisions applying *Teague*. Therefore, if *Lafler* and *Frye* are retroactive under federal law as decisions that merely applied the principles of earlier cases, then they create a new cause of action under the PCRA.

### B.  Lafler *and* Frye *Were Not Dictated by Precedent*

¶13    Unfortunately for Mr. Winward, we are persuaded that *Lafler* and *Frye* are not retroactive under the federal "dictated by precedent" standard, and that they therefore do not create a new cause of action under section 78B-9-104(1)(f).[3] In doing so, we look in part to the level of

---

[3] We recognize that this conclusion is in tension with the federal circuit courts' unanimous determination that *Lafler* and *Frye* did not announce a "new rule" that allows a "second or successive" habeas petition under AEDPA. From First Circuit to Eleventh, see *Pagan-San Miguel v. United States*, 736 F.3d 44, 45 (1st Cir. 2013) (per curiam); *Gallagher v. United States*, 711 F.3d 315, 315 (2d Cir. 2013) (per curiam); *Navar v. Warden Fort Dix FCI*, 569 F. App'x 139, 139–40 (3d Cir. 2014) (per curiam); *Harris v. Smith*, 548 F. App'x 79, 79 (4th Cir. 2013) (per curiam); *In re King*, 697 F.3d 1189, 1189 (5th Cir. 2012) (per curiam); *In re Liddell*, 722 F.3d 737, 738 (6th Cir. 2013) (per curiam); *Hare v. United States*, 688 F.3d 878, 879 (7th Cir. 2012); *Williams v. United States*, 705 F.3d 293, 294 (8th Cir. 2013) (per curiam); *Buenrostro v. United States*, 697 F.3d 1137, 1140 (9th Cir. 2012); *In re Graham*, 714 F.3d 1181, 1183 (10th Cir. 2013) (per curiam); *In re Perez*, 682 F.3d 930, 932–33 (11th Cir. 2012) (per curiam).

Ultimately these cases do not decide the issue. Their reasoning is mostly cursory, and few of them explicitly apply the "dictated by precedent" standard from *Teague*. And, although courts sometimes use *Teague* to interpret AEDPA's "new rule" standard, *see, e.g., Perez*, 682

judicial disagreement surrounding *Lafler* and *Frye*, but we also perform an independent assessment of the law as it existed prior to those decisions and ask whether that law dictated the outcome of *Lafler* and *Frye*.[4]

1. Differences of Judicial Opinion Before *Lafler* and *Frye*

¶14    When applying *Teague*, the U.S. Supreme Court looks in part to the differences of opinion surrounding a particular issue prior to its authoritative decision by the Court. In doing so, it has sometimes looked for division among lower courts over the issue, *see Butler v. McKellar*, 494 U.S. 407, 415 (1990), or to the degree of disagreement among the Justices who considered the issue when it was decided, *see O'Dell v. Netherland*, 521 U.S. 151, 159–160 (1997). It also asks whether the Supreme Court that announced the rule claimed to be relying on "controlling precedent," or whether it expressly announced a new rule. *Lambrix v. Singletary*, 520 U.S. 518, 528–29 (1997). These considerations support a conclusion that *Lafler* and *Frye* were dictated by controlling precedent, but not overwhelmingly so.

¶15    Examining first the differences of opinion among courts prior to *Lafler* and *Frye*, we see that very few courts disagreed with the doctrine that *Lafler* and *Frye* articulated. Among the federal courts of appeals, it seems only the Seventh Circuit held that defendants are not prejudiced by a failure to accept an advantageous plea bargain. *See*

---

F.3d at 932–33, we are aware of no court explicitly holding that the two are the same, or using cases under AEDPA's "new rule" standard to guide its application of *Teague*. We also note that the one federal decision of which we are aware that considered whether *Lafler* and *Frye* were "dictated by precedent" under *Teague*, rather than whether they announced a "new rule" under AEDPA, agrees with our conclusion that *Lafler* and *Frye* were not dictated by precedent. *Berry v. United States*, 884 F. Supp. 2d 453, 462 (E.D. Va. 2012). We therefore conclude that the cases holding that *Lafler* and *Frye* do not establish a new rule for AEDPA purposes, although persuasive, are not dispositive.

[4] We note in this context that under the PCRA, the chief issue is whether *Lafler* and *Frye* were "dictated by precedent existing *at the time the petitioner's conviction or sentence became final*," UTAH CODE § 78B-9-104(1)(f)(i) (emphasis added)—in this case, precedent existing in 1997. If we were applying a rapidly changing, unsettled body of legal principles, this might require a close analysis of the law of 1997, but here such analysis is unnecessary. Because we are persuaded that no precedent preexisting *Lafler* and *Frye* dictated those cases' outcome, we can simply hold that *Lafler* and *Frye* never create a new cause of action under section 104(1)(f).

*United States v. Springs*, 988 F.2d 746, 749 (7th Cir. 1993). Courts in Louisiana and Missouri reached similar conclusions, *see State v. Monroe*, 757 So. 2d 895, 898 (La. Ct. App. 2000); *Bryan v. State*, 134 S.W.3d 795, 802 (Mo. Ct. App. 2004), and so, of course, did we, *see State v. Greuber*, 2007 UT 50, ¶ 12, 165 P.3d 1185 ("[A] fair trial for the defendant generally negates the possibility of prejudice."). But a large majority of the courts presented with claims like those in *Lafler* and *Frye*—even the Seventh Circuit itself in a later case—reached the same result that *Lafler* and *Frye* did, though they frequently did not acknowledge the precise legal question that *Lafler* and *Frye* decided. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012) (listing circuit court decisions consistent with *Lafler*); *Greuber*, 2007 UT 50, ¶ 12 n.4 (listing decisions inconsistent with our holding in *Greuber*). This is exactly the sort of near-unanimity we would expect to see if *Lafler* and *Frye* were dictated by precedent.

¶16 Much of the Supreme Court's opinions in *Lafler* and *Frye* also support a conclusion that these decisions were dictated by precedent. To begin with, the decisions were made on appeal from postconviction proceedings. *Lafler*, 132 S. Ct. at 1383–84; *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012). In such proceedings, a court normally applies the law as it existed at the time of the conviction, *see Teague*, 489 U.S. at 310, and the Supreme Court usually does not use such proceedings as an occasion to pronounce new law. *See id.* at 316; *In re Perez*, 682 F.3d 930, 933 (11th Cir. 2012) (per curiam) ("[T]he Court rarely, if ever, announces and retroactively applies new rules of constitutional criminal procedure in the postconviction context."). Further, the Court's opinions generally present their reasoning in terms of the application of precedent, rather than reasoning from constitutional first principles. *See Lafler*, 132 S. Ct. at 1384–87 (discussing cases including *Strickland v. Washington*, 466 U.S. 668 (1984); *Hill v. Lockhart*, 474 U.S. 52 (1985); *Lockhart v. Fretwell*, 506 U.S. 364 (1993); and *Nix v. Whiteside*, 475 U.S. 157 (1986)). For the most part, they are the sort of opinions we would expect to see when the Supreme Court applies an old rule rather than articulating a new one.

¶17 Nevertheless, the opinions did not expressly say that they applied old law rather than articulating new law. *Hare v. United States*, 688 F.3d 878, 879 (7th Cir. 2012) ("Neither *Frye* nor [*Lafler*] directly addressed the old rule/new rule question . . . .").[5] And although they

---

[5] As *In re Perez* points out, *Lafler* did hold that the state court whose decision it was reviewing had acted "contrary to clearly established law," as was required by AEDPA for habeas relief. *Perez*, 682 F.3d at 933 (quoting *Lafler*, 132 S. Ct. at 1390). And, as *Perez* points out, in order for a rule to be "clearly established law" under AEDPA, it must be an old rule under *Teague. Id.*

emphasized precedent, so did the opinions of the four dissenters. *See Lafler*, 132 S. Ct. at 1392 (Scalia, J., dissenting) ("[*Lafler*'s result] is foreclosed by our precedents."); *id.* at 1393 ("[*Lafler*] is a vast departure from our past cases . . . ."). Justice Scalia, writing for three Justices, described *Lafler* as "open[ing] a whole new field of constitutionalized criminal procedure." *Id.* at 1391.

¶18    In short, *Lafler* and *Frye* announced a rule that was followed by a large majority of courts, and they did so in postconviction cases, in opinions devoted primarily to the application of precedent. Yet they did not say they were dictated by precedent, and they were both 5–4 decisions with dissenting opinions that also claimed the clear support of precedent. Although, on the whole, these considerations suggest that *Lafler* and *Frye* were dictated by precedent, we do not find them conclusive.

2. Independent Assessment of *Lafler* and *Frye*

¶19    The key holding of *Lafler* and *Frye* is that a defendant who has been convicted as the result of a fair trial or voluntary plea, and sentenced through a constitutionally immaculate sentencing process, can claim to have been prejudiced by his counsel's ineffectiveness during plea bargaining. And this key holding is simply not to be found in the Supreme Court's prior case law—not explicitly, and not by clear implication.

¶20    *Strickland v. Washington* does, as *Lafler* points out, describe the test for prejudice as requiring defendants to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). And this can undoubtedly be read to support *Lafler*'s conclusion that "[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Id.* But other language in *Strickland* suggests a different interpretation. *Strickland* also describes its prejudice test as requiring a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," 466 U.S. at 687, and states that the "purpose" of the right to effective

---

But, contrary to *Perez*, the *Lafler* Court did not hold that the state court had acted contrary to clearly established law by applying *Strickland* in a manner that failed to anticipate the outcome of *Lafler* and *Frye*. Instead, the *Lafler* Court concluded that the state court had failed to apply *Strickland* at all. 132 S. Ct. at 1390. It was this failure, not the failure to anticipate *Lafler* and *Frye*, that was contrary to clearly established law and therefore allowed the Court to grant habeas relief. *Id.*

assistance of counsel is "to ensure a fair trial," *id.* at 686. The holding of *Lafler*—that prejudice is possible even if a defendant has received a fair trial—decides an issue neither contemplated nor addressed by *Strickland*.

¶21 Later cases may have expanded *Strickland*'s prejudice test, but they still did not dictate the result in *Lafler* and *Frye*. For example, *Hill v. Lockhart* established that prejudice exists where a defendant accepts a plea bargain because of ineffective assistance, and thus waives his right to trial. 474 U.S. at 59. But it did not establish the converse: that prejudice exists when a defendant rejects a plea bargain because of ineffective assistance, thereby exercising his right to trial. *Kimmelman v. Morrison* established that *Strickland* prejudice does not require an actually unreliable verdict, but merely a verdict based on an unfair process. 477 U.S. 365, 380 (1986). But the admission of unlawfully obtained evidence, which was addressed in *Kimmelman*, is a sort of procedural unfairness very different from the failure to accept an advantageous plea bargain.

¶22 Further, while some later cases expanded the scope of *Strickland*'s prejudice test in ways relevant to *Lafler* and *Frye*, other cases have limited it. In particular, the *Lafler* dissenters rely on *Lockhart v. Fretwell*, which makes clear that not all potential differences in outcome can constitute prejudice: "[A] prejudice analysis 'focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable,' would be defective." *Lafler*, 132 S. Ct. at 1394 (Scalia, J., dissenting) (quoting *Fretwell*, 506 U.S. at 369).

¶23 This seems to us to be the pivot on which *Lafler* turns: whether it is "fundamentally unfair" to give someone a harsher sentence than would have been available to him under a plea deal that he would have accepted but for his counsel's failures. And for authority on this crucial point, *Lafler* cites only its companion case *Frye* and a law review article published in 2011. *Lafler*, 132 S. Ct. at 1387 (citing *Frye*, 132 S. Ct. at 1407–08, and Stephanos Bibas, *Regulating the Plea-Bargaining Market: From Caveat Emptor to Consumer Protection*, 99 CAL. L. REV. 1117, 1138 (2011)). It was not the Court's precedent that decided this issue, but its recognition that "plea bargains have become . . . central to the administration of the criminal justice system," *Frye*, 132 S. Ct. at 1407, and its desire to extend the protections of the Constitution to defendants who never go to trial. Whether this extension was wise or foolish is not for us to decide, but we are convinced that it was in fact an extension.

¶24 In short, we cannot conclude that *Lafler* and *Frye* merely applied the principles of old cases to new facts, as the "dictated by precedent" standard requires. Consequently, *Lafler* and *Frye* do not give

rise to a new cause of action under Utah Code section 78B-9-104(1)(f), and we must affirm the district court's dismissal of Mr. Winward's claim.

## II. WE DECLINE TO CONSIDER THE STATE'S CHALLENGE TO THE SUFFICIENCY OF MR. WINWARD'S FACTUAL ALLEGATIONS

¶25 As the above analysis shows, the district court was correct: there is no set of facts that would entitle Mr. Winward to relief under section 104(1)(f). We therefore decline to consider the State's alternative argument that Mr. Winward's claim should be dismissed because he failed to plead adequate facts under *Lafler* and *Frye*.

¶26 The State encouraged us to adopt this alternative argument because "it avoids the necessity of delving into a constitutional question of first impression." We disagree. Each of the State's arguments would require us to determine how a federal constitutional issue—namely, the correct application of *Lafler* and *Frye*—interacts with a state statutory issue, namely the correct interpretation of the PCRA and (in the case of the State's alternative argument) the Utah Rules of Civil Procedure.

¶27 We have decided the case based on our interpretation of section 104(1)(f) for two reasons. First, of the State's two arguments, this one has the narrower implications. The PCRA gives petitioners only a one-year window in which to bring 104(1)(f) petitions under new Supreme Court decisions. UTAH CODE § 78B-9-107(1), (2)(f). *Lafler* and *Frye* were decided in 2012, and their one-year window closed in 2013. It is therefore unlikely that any new 104(1)(f) petitions relying on *Lafler* and *Frye* will ever be filed again, and our application of section 104(1)(f) will affect only Mr. Winward and the similarly situated prisoners—if any—whose 104(1)(f) petitions are currently pending below.

¶28 On the other hand, deciding this case on the State's alternative basis would set the pleading standard for all future PCRA petitions based on *Lafler* and *Frye*. This would not be a bad thing, of course; at some point, that standard will need to be set. But setting it will require us to untangle a procedural issue that has not been briefed in this case.

¶29 Specifically, rule 65C directs PCRA petitioners to file affidavits and other evidence with their complaint. UTAH R. CIV. P. 65C(e)(1). Mr. Winward did so here, filing three separate affidavits, which the State's brief cites as being part of Mr. Winward's petition. Yet these affidavits are not obviously part of Mr. Winward's petition, but rather "attachments" to it. UTAH R. CIV. P. 65C(e). The petition itself is the equivalent of a complaint in an ordinary civil case, and rule 12(b) does not usually allow judges to consider evidence outside the complaint when they rule on 12(b)(6) motions. Instead, it requires them

either to "exclude[]" such evidence or to treat the 12(b)(6) motion as a motion for summary judgment and give "all parties . . . reasonable opportunity to present" their facts. UTAH R. CIV. P. 12(b).

¶30    In order to rule on the State's alternative argument, we would have to determine whether it would be appropriate for us to treat Mr. Winward's affidavits as part of his petition on a 12(b)(6) motion. This question has not been briefed at all by the parties. Indeed, the State's entire alternative argument—the sufficiency of Mr. Winward's factual allegations under *Lafler* and *Frye*—has not been adequately briefed by the petitioner. *Infra* ¶ 37.

¶31    Under such circumstances, the wiser course is the narrower one, with clearer law and better briefing. We therefore decline to determine whether Mr. Winward has pleaded facts adequate for relief under *Lafler* and *Frye*—or rather, facts that would be adequate if *Lafler* and *Frye* could possibly provide relief to a petitioner in Mr. Winward's circumstances.

## III. WE CANNOT CONSIDER MR. WINWARD'S OTHER ARGUMENTS

¶32    When we remanded this case for further proceedings, the scope of our remand was clear and narrow. "To qualify [for relief]," we wrote, "Mr. Winward must prove two things": first, that he was entitled to relief under *Lafler* and *Frye*; and second, that "the rule [established in *Lafler* and *Frye*] was dictated by precedent existing at the time the petitioner's conviction or sentence became final." *Winward v. State*, 2012 UT 85, ¶ 35, 293 P.3d 259 (quoting UTAH CODE § 78B-9-104(1)(f)).

¶33    Since we remanded, however, Mr. Winward has found a new attorney—Thomas Burton—and the change has not been an improvement. Instead of following our instructions and arguing that *Lafler* and *Frye* were "dictated by precedent existing at the time the petitioner's conviction or sentence became final," Mr. Burton has tried to persuade us that *Lafler* and *Frye* are "total watershed cases" and "more important than *Gideon* [*v. Wainwright*]." According to Mr. Burton, these cases establish a broad principle that "the plea bargain stage is the most important part of the criminal procedure." To this first broad principle Mr. Burton adds a second—which he locates in *Faretta v. California*, 422 U.S. 806 (1975)—under which a criminal defendant has a "[Sixth] Amendment constitutional right to control his own defense."

¶34    From these two principles Mr. Burton derives an alarming set of conclusions. The smallest of these is that Mr. Winward had an "absolute right to know everything in detail about any pleas sought or received." Because this right was violated, Mr. Burton argues, Winward is now "entitled to immediate release" without regard to the procedural

limitations of the PCRA. Indeed, Mr. Burton seems to suggest that Mr. Winward must be released even if his counsel's performance was perfectly adequate.

¶35    But this is only the beginning. Because serious crimes in Utah usually carry indeterminate sentences, a person pleading guilty to one of these crimes does not know, at the time of his plea bargain, precisely what period of incarceration he is accepting by pleading guilty. This violates Mr. Burton's principle that defendants must know "everything in detail" about the plea bargains that are offered to them. Mr. Burton therefore argues that all defendants who have pled guilty to crimes bearing indeterminate sentences must be allowed to enforce the sentencing guidelines against the parole board as a binding part of their plea agreement—or, in the alternative, that all of them must be released at once. In fact, Mr. Burton tells us, all indeterminate sentences are constitutionally invalid because they violate procedural and substantive due process and our constitutional requirement of separation of powers.

¶36    How are we to respond to such arguments? They're not the worst we've seen: they follow a discernable logic, and they express legitimate concerns about the fairness of a criminal justice system that, though designed for trials and sentences, is now dominated by pleas and paroles. But they misconstrue precedent in a manner far exceeding good-faith disagreement, one that demonstrates either gross incompetence or a reckless disregard for the law.

¶37    Perhaps more to the point, these arguments help us not a whit in deciding this case. They go far beyond the scope of the ruling from which Mr. Winward appeals; indeed, they go beyond the scope of the statute that provides the basis for Mr. Winward's entire petition. They are thus legally irrelevant, and Mr. Burton's devotion to them has distracted him from litigating the issues on which his client's fate actually depends. In particular, after the State's brief raised the serious issue of the adequacy of Mr. Winward's petition, Mr. Burton could spare only a page of his reply brief for his response—a page lacking even a single citation to the petition whose adequacy had been challenged. The remainder of his reply was dedicated to persuading us that we really can release the majority of Utah's prison population immediately, and to reviving a *Strickland* claim whose dismissal we had already affirmed in our earlier *Winward* decision.

¶38    We note that we are not the first court to reprimand Mr. Burton for his conduct in prosecuting an appeal. Just last year, the court of appeals struck one of Mr. Burton's briefs because it was "irrelevant and scandalous," *State v. Wolf*, 2014 UT App 18, ¶ 12 n.4, 319 P.3d 757, and, in a later case, cautioned him not to employ "inflammatory language and personal accusations" in his briefing, *State*

*ex. rel. C.M. v. State*, 2014 UT App 234, ¶ 8, 336 P.3d 1069. In 2010, a California court sanctioned Mr. Burton for "flagrant" violations of the appellate rules. *Emercon Const., Inc., v. Butterfield*, No. G041033, 2010 WL 1952736, at \*15 (Cal. Ct. App. May 17, 2010). And as far back as 2003, the Tenth Circuit chose to remind Mr. Burton that, under Tenth Circuit rules, "presenting a brief to the court constitutes an attorney's certification that the issues presented are warranted by existing law or by a nonfrivolous argument for [changing the law,] and that the factual contentions or denials are supported in the record." *LaFleur v. Teen Help*, 342 F.3d 1145, 1154 (10th Cir. 2003) (internal quotation marks omitted).

¶39 Since reminders, reprimands, and sanctions have not motivated Mr. Burton to conduct himself as a competent and professional appellate advocate, we conclude that harsher punishment is necessary. We therefore refer Mr. Burton to the Office of Professional Conduct for appropriate disciplinary proceedings.

## CONCLUSION

¶40 In summary, we conclude that *Lafler v. Cooper* and *Missouri v. Frye* were not dictated by any precedent existing prior to their decision. We therefore agree with the district court that Mr. Winward could not have alleged any set of facts that would have given him a cause of action under the PCRA's retroactivity provision, and, accordingly, affirm the district court's dismissal of Mr. Winward's claim.

---