**2017 UT App 61**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF M.L.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

STATE OF UTAH, DIVISION OF CHILD AND FAMILY SERVICES,
Petitioner,
*v.*
THE HONORABLE SUCHADA P. BAZZELLE,
Respondent.

Opinion
No. 20160486-CA
Filed March 30, 2017

Original Proceeding in this Court

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Petitioner

Brent M. Johnson, Attorney for Respondent

Martha Pierce and Dixie A. Jackson,
Guardians ad Litem

Caleb Proulx, Attorney for J.V.

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
GREGORY K. ORME and DAVID N. MORTENSEN concurred.

TOOMEY, Judge:

¶1     This matter originated in a child neglect proceeding in the course of which M.L.'s putative father petitioned to establish paternity. The paternity issue had not been resolved when the juvenile court terminated the parental rights of M.L.'s mother, and the court continued with adjudicating the putative father's petition. The State of Utah, through the Division of Child and Family Services (DCFS), petitions this court for extraordinary relief, arguing the juvenile court exceeded its subject matter

jurisdiction when it granted the putative father's petition, and asking us to vacate its adjudication of parentage. We deny the State's petition.

BACKGROUND

¶2    On May 13, 2015, the State filed a petition in juvenile court seeking custody of M.L., who was born in July 2014, and a determination that she was a neglected child. The State's petition identified J.V. as M.L.'s putative father. The next day, the court held a shelter hearing in which it approved the removal of M.L. from the house of her mother (Mother) and her placement in the temporary custody of DCFS. J.V. was present for this hearing. The Court invited J.V. to the counsel table and advised him that he would need to establish paternity. The court added that it "[would] not make a finding as to the alleged Father at this time until he establishes paternity."

¶3    Mother stipulated that M.L. was a neglected child, and the juvenile court conducted a disposition hearing in June 2015. It ordered reunification services for Mother and set reunification with M.L. as a goal, but with a concurrent plan for her adoption. J.V. was again present. The hearing minutes reflect that he "has tried to establish paternity" and "wants to request DNA testing" by the Office of Recovery Services. The juvenile court informed J.V. that "he needs to file a declaration of paternity," and "[a]s soon as [he] establishes paternity, we can get him an attorney and start services."

¶4    At a permanency hearing in December 2015, the juvenile court changed M.L.'s permanency goal from reunification to adoption and directed the State to file a petition for termination of Mother's parental rights. Mother informed the court that she wanted to voluntarily relinquish her parental rights. J.V.

attended this hearing and told the court he was working to establish paternity but had not yet done so.

¶5 On December 31, 2015, before Mother's parental rights were terminated, J.V., having obtained counsel, petitioned the juvenile court for custody of M.L. and an adjudication of paternity. He also filed a motion to intervene in the child welfare case.

¶6 During a January 2016 hearing scheduled for another purpose, the juvenile court accepted Mother's voluntary relinquishment of parental rights.[1] J.V.'s counsel noted that J.V. expected to be heard at a subsequent hearing, which had already been set, and stated that Mother's voluntary relinquishment of her rights would not affect J.V.'s petition.

¶7 The court directed the State to file an answer to J.V.'s petition. Shortly thereafter, the State moved to dismiss the petition. Instead, the court granted the parentage petition, establishing J.V.'s paternity.

¶8 In April 2016, the State filed a motion asking the juvenile court to vacate its order granting J.V.'s petition.[2] The State argued the court lacked subject matter jurisdiction to grant the petition because juvenile courts do not have "authority to adjudicate paternity of an alleged father after a mother voluntarily relinquishes her parental rights." The court

---

1. Although the juvenile court ordered the State to file a petition for termination of parental rights as to Mother, the State never did so.

2. The State brought its motion under rule 60(b)(4) of the Utah Rules of Civil Procedure, which permits a court to relieve a party from a final judgment if "the judgment is void."

disagreed and denied the motion. The State's petition for extraordinary relief followed.

ISSUE AND STANDARD OF REVIEW

¶9     The State asks us to vacate the juvenile court's order granting J.V.'s petition for adjudication of parentage on the ground that the court lacked subject matter jurisdiction when it granted the petition. Rule 65B(a) of the Utah Rules of Civil Procedure provides that, "[w]here no other plain, speedy and adequate remedy is available, a person may petition the court for extraordinary relief on any of the grounds" set forth in the rule. The ground for relief relevant to this case is identified in subsection (d) of rule 65B, which provides that relief may be granted "where an inferior court . . . has exceeded its jurisdiction." Utah R. Civ. P. 65B(d)(2)(A).

¶10    "A denial of a motion to vacate a judgment under rule 60(b) is ordinarily reversed only for an abuse of discretion," but where a motion to vacate a judgment "is based on a claim of lack of jurisdiction, the [juvenile] court has no discretion." *Jackson Constr. Co. v. Marrs*, 2004 UT 89, ¶ 8, 100 P.3d 1211 (citation and internal quotation marks omitted). Accordingly, this court's determination "becomes a question of law upon which we do not defer to the [juvenile] court." *Id.* (citation and internal quotation marks omitted). The burden of demonstrating a lack of jurisdiction, however, "lies on the party challenging jurisdiction." *Id.* ¶ 9.

¶11    If a court exceeds its jurisdiction, the petitioner is "*eligible* for, but not entitled to, extraordinary relief." *See State v. Barrett*, 2005 UT 88, ¶ 24, 127 P.3d 682 (emphasis added). "Unlike a party filing a direct appeal, a petitioner seeking rule 65B(d) extraordinary relief has no right to receive a remedy that corrects a lower court's mishandling of a particular case. Rather, whether

relief is ultimately granted is left to the sound discretion of the court hearing the petition." *Id.* ¶ 23. Where a petitioner is eligible for relief, the court will apply an additional layer of analysis. *See id.* ¶ 24. "[W]hen determining whether or not to grant the relief requested in the petition," the court will consider several factors, such as: (1) "the egregiousness of the alleged error," (2) "the significance of the legal issue presented by the petition," and (3) "the severity of the consequences occasioned by the alleged error." *Id.* Our supreme court has stated that this several-factor test is "akin to [the supreme court's] exercise of its certiorari review powers." *Id.*

> Rule 46 of the Utah Rules of Appellate Procedure states that [r]eview by a writ of certiorari is not a matter of right, but of judicial discretion and will be granted only for special and important reasons. The rule goes on to provide a list of factors neither controlling nor wholly measuring the Supreme Court's discretion, but which indicate the character of reasons that will be considered when deciding whether to grant certiorari review.

*Id.* (alteration in original) (citation and internal quotation marks omitted).

ANALYSIS

¶12　The only issue before us is whether the juvenile court had subject matter jurisdiction when it granted J.V.'s parentage petition. Relying on *In re D.A.*, 2009 UT 83, 222 P.3d 1172, which it argues is controlling precedent, the State contends the juvenile court's jurisdiction ended when Mother voluntarily relinquished her parental rights.

¶13　J.V., M.L.'s guardian ad litem, and the juvenile court judge, as the respondent, each argue that *D.A.* is not controlling,

albeit for different reasons. J.V. contends *D.A.* was "wrongly decided because it fails to consider the impact and effect of the Utah Uniform Parentage Act," and in any event the juvenile court has incidental jurisdiction over J.V.'s paternity action under *J.W.F. v. Schoolcraft*, 763 P.2d 1217 (Utah Ct. App. 1988), *rev'd in part by In re J.W.F.*, 799 P.2d 710 (Utah 1990),[3] "because Father has also sued for custody of M.L."

¶14    The guardian ad litem distinguishes *D.A.*, arguing that "the juvenile court appropriately extended jurisdiction over the parentage action because it was filed during the pendency of an active child welfare proceeding. . . . Having appropriately extended jurisdiction, the juvenile court did not lose jurisdiction to adjudicate the matter and in fact was obligated to do so."

¶15    The juvenile court judge also distinguishes *D.A.*, arguing that "[t]he mother's relinquishment of rights did not automatically divest the court of jurisdiction over paternity. A court is divested of jurisdiction only when a law clearly requires divestiture and no such law exists in this situation."

¶16    Juvenile courts have exclusive original jurisdiction in several types of proceedings involving children, including those who are abused or neglected. Utah Code Ann. § 78A-6-103(1)(c) (LexisNexis 2012). Juvenile courts also have exclusive original jurisdiction in "the termination of the legal parent-child relationship," in certain contexts such as neglect and abuse. *Id.* §§ 78A-6-103(1)(g), -507(1). This case originated in a child neglect

---

3. *J.W.F. v. Schoolcraft*, 763 P.2d 1217 (Utah Ct. App. 1988), *rev'd in part by In re J.W.F.*, 799 P.2d 710 (Utah 1990), is inapposite in the present case. Because *Schoolcraft* turned on a narrow issue of standing and because we determine the juvenile court had jurisdiction to grant J.V.'s petition, we do not address this argument.

proceeding, and as to Mother, ended with the relinquishment of her parental rights.

¶17    Juvenile courts also have concurrent jurisdiction with the district courts "in establishing paternity," *id.* § 78A-6-104(1)(b), and "to adjudicate parentage," *id.* § 78B-15-104(1). These powers are vested under separate titles and chapters of the Utah Code—the Juvenile Court Act (the JCA) at Title 78A, Chapter -6, and the Utah Uniform Parentage Act (the UUPA) at Title 78B, Chapter-15—but they complement one another.

¶18    The JCA explicitly refers to the UUPA, providing that the district and juvenile courts have concurrent jurisdiction to "establish[] paternity and order[] testing for the purposes of establishing paternity, in accordance with [the UUPA], with regard to proceedings initiated under Part 3, Abuse, Neglect, and Dependency Proceedings, or Part 5, Termination of Parental Rights Act." *Id.* § 78A-6-104(1)(b). In turn, the UUPA provides that the district courts and juvenile courts each have jurisdiction "to adjudicate parentage under Parts 1 through 6." *Id.* § 78B-15-104(1). Part 6, Adjudication of Parentage, authorizes proceedings "to determine the parentage of a child," and establishes procedural and substantive rules for adjudication of parentage. *Id.* § 78B-15-601 *et seq*. In other words, juvenile and district courts each have jurisdiction to adjudicate parentage under the UUPA for the purpose of establishing paternity in connection with proceedings brought under the JCA, but only the juvenile court has jurisdiction with respect to abuse and neglect proceedings and the termination of parental rights proceedings that sometimes eventuate from them.

¶19    The UUPA does not explicitly refer to the JCA, but broadly provides that "a judicial proceeding to adjudicate parentage may be joined with a proceeding for adoption, termination of parental rights, child custody or visitation, child support, divorce, annulment, legal separation or separate

maintenance, probate or administration of an estate, or other appropriate proceeding." *Id.* § 78B-15-610(1).[4] Although the UUPA does not define "proceeding," the plain and ordinary meaning[5] of that term is "a particular action at law or case in litigation" and it is synonymous with "legal action." *Proceedings*, Webster's Third New International Dictionary (1968). An "action" is commenced not by filing a motion but by filing a complaint, Utah R. Civ. P. 3(a), or in certain situations, such as a child welfare proceeding, a petition, *Winward v. State*, 2015 UT 61, ¶ 29, 355 P.3d 1022 ("The petition itself is the equivalent of a complaint in an ordinary civil case . . . .").[6]

¶20    In *D.A.*, the State initiated a child welfare proceeding by filing a petition seeking a declaration that D.A. was an abused or neglected child. 2009 UT 83, ¶ 5, 222 P.3d 1172. It then filed a petition to terminate the mother's parental rights. *Id.* ¶ 6. During a hearing, the juvenile court informed the putative father it had

---

4. The State did not address this section in its briefing.

5. Undefined terms in a statute should be given their plain and ordinary meaning, *In re M.L.T.*, 746 P.2d 1179, 1180 (Utah Ct. App. 1987), and "when determining the plain and ordinary meaning of statutory terms we turn to the dictionary for guidance," *In re J.D.M.*, 810 P.2d 494, 497 (Utah Ct. App. 1991).

6. A motion is a court paper, not a pleading as the State suggests in its briefing. Bryan A. Garner, Garner's Dictionary of Legal Usage 682 (3d ed. 2011) ("[P]*leading* should be distinguished from *court paper*, which is a broader term. Motions, briefs, and affidavits are *court papers*, not *pleadings*." (emphasis in original)). Pleadings include a complaint, an answer to a complaint, an answer to a counterclaim designated as such, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and a reply to an answer. Utah R. Civ. P. 7(a).

set a date for trial on the State's petition to terminate the mother's parental rights. *Id.* One day before trial, the putative father filed a motion to intervene and for paternity testing. *Id.* ¶ 7. On the day of trial, the court accepted the mother's voluntary relinquishment of her parental rights without considering the putative father's motion. *Id.* Several days later, the court held a hearing to consider the motion to intervene. *Id.* ¶ 8. The State argued the putative father could not be made a party because the mother "had already relinquished her parental rights and there was no longer a pending action in which he could intervene." *Id.* The court agreed and denied the motion to intervene. *Id.* ¶ 9.

¶21    On appeal, our supreme court noted that, although the UUPA authorizes "both the district court and the juvenile court . . . to adjudicate paternity," juvenile courts may adjudicate paternity "only in proceedings involving abuse, neglect and dependency, or termination of parental rights." *Id.* ¶ 19. The court concluded that the mother's relinquishment of her parental rights "resulted in the dismissal of the State's petition to terminate her parental rights and effectively ended both the neglect proceeding and the proceeding against [the mother] to terminate her parental rights." *Id.* ¶ 26. Thus, both proceedings (and the only two pending) had been completed, and "even if the juvenile court had attempted to adjudicate [the putative father's] paternity, the adjudication would be void because the court lacked jurisdiction." *Id.*

¶22    The State's argument here conflates a motion for paternity testing with a petition for adjudication of parentage. The State also argues that in *D.A.*, our supreme court considered the jurisdictional grants under the UUPA but instead "adopted the more specific statutory provisions in the Juvenile Court Act." The State is mistaken.

¶23   The putative father in *D.A.* filed a motion for paternity testing, but did not file a petition to adjudicate parentage. *Id.* ¶ 7. This is an important distinction. The motion for paternity testing fell within the ambit of the JCA's provision granting jurisdiction to juvenile courts "in establishing paternity and ordering testing for the purposes of establishing paternity," but the juvenile court case ended when D.A.'s mother's rights were terminated and no other judicial proceeding had been joined to the juvenile court proceeding. *See* Utah Code Ann. § 78A-6-104(1)(b) (LexisNexis 2012); *id.* § 78B-15-610(1). The supreme court had no occasion to consider applying the jurisdictional grant under the UUPA, which allows "a judicial proceeding to adjudicate parentage" to "be joined with a proceeding for . . . termination of parental rights . . . ." *See id.* § 78B-15-610(1). We therefore conclude that *D.A.* is not controlling in this case.

¶24   In sum, the *D.A.* court did not consider the UUPA's joinder provision because, although the putative father's motion had not been resolved, he had not initiated a proceeding that could be joined with the existing child neglect and abuse proceeding and the eventual termination of parental rights proceeding had concluded.

¶25   In the case before us, pursuant to the UUPA's joinder provision, J.V.'s petition for adjudication of parentage was joined with the child welfare proceeding before Mother relinquished her parental rights, extending the juvenile court's jurisdiction to J.V.'s petition. In other words, because J.V.'s petition was filed before Mother relinquished her parental rights, the child welfare case remained open. *See id.* § 78A-6-104(1)(b) (establishing concurrent jurisdiction of juvenile courts to determine paternity in child welfare cases "initiated" under the JCA). We thus conclude the juvenile court did not lack jurisdiction when it granted J.V.'s petition.

## CONCLUSION

¶26    Because we conclude the juvenile court did not exceed its jurisdiction, the State is ineligible for extraordinary relief.[7] Its petition is therefore denied.

———————

7. In its petition for extraordinary relief, the State requested that, in the event we determine extraordinary relief is not appropriate, we treat its petition "as a Rule 5 petition for permission for an interlocutory appeal." Our analysis of whether the juvenile court exceeded its jurisdiction would not change on appeal, and the result would be the same. Accordingly, we exercise our discretion under rule 5(a) of the Utah Rules of Appellate Procedure and deny the State's request.